**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | |
|---|---|
| **DANIEL GENE BOZE, et al.,** | **Case No. 2:21-cv-00002** |
| **Plaintiffs,** | |
| **v.** | **Chief Judge Waverly D. Crenshaw, Jr.** |
| | **Magistrate Judge Alistair Newbern** |
| **GREAT AMERICAN** | |
| **INSURANCE COMPANY,** | |
| **Defendant.** | |

**GREAT AMERICAN INSURANCE COMPANY'S BRIEF IN SUPPORT OF**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT (COUNTS I, II, III, IV, AND V)**

### Table of Contents

TABLE OF AUTHORITIES ........................................................................................ iii
I.    INTRODUCTION ...................................................................................... 1
   A.   ISSUES PRESENTED .......................................................................... 1
   B.   STANDARD OF REVIEW .................................................................... 2
   C.   SUMMARY OF KEY FACTS ALLEGED IN THE COMPLAINT ................ 2
II.   FEDERAL CROP INSURANCE POLICIES – LEGAL BACKGROUND ......... 4
   A.   PLAINTIFF'S POLICY TERMS ARE FEDERAL LAW .......................... 4
   B.  ONLY FCIC MAY INTERPRET THE POLICY ..................................... 5
   C.   FEDERAL LAW AND THE POLICY PREEMPT DAMAGES CLAIMS ...... 6
     i.  7 USC 1506(1) .......................................................................... 8
     ii.  Federal Crop Insurance Regulations (7 CFR Part 400) .................. 8
     iii.  MPCI Basic Provisions ¶31 ........................................................ 9
     iv.  MPCI Basic Provisions ¶20(h) and (i) ......................................... 9
     v.  MPCI Basic Provisions ¶20(d)(1)(iii) .......................................... 10
     vi.  FAD-240 and FAD-251 Confirm Preemption. .............................. 10
   D.  THE POLICY TERMS ARE NOT WAIVABLE ..................................... 13

    E. DEFINED CONTRACT METHODS APPLY TO RESOLVE CLAIM
    DISAGREEMENTS AND GOVERN WHEN PAYMENT IS DUE ...................................... 13

III.     ARGUMENT ................................................................................................. 16

   A.    COUNT I: SECTION 20 DOES NOT CREATE A RIGHT TO DAMAGES. ............... 16

     i. Section 20 Does Not Authorize an Independent Cause of Action. .................................. 16

     ii. Plaintiffs Have Not Requested "Judicial Review" of the Award. ................................. 18

   B.    COUNT II: NO BREACH IS ACTUALLY ALLEGED ............................................... 19

     i.     Plaintiffs' Allegations Demonstrate No Breach at All ............................................. 19

     ii.     Plaintiffs Allege No Breach ..................................................................................... 20

   B.    COUNT III: DEFENDANT IS NOT LIABLE FOR BAD FAITH. ................................ 20

     i.     Tennessee Does Not Recognize a Common Law Bad Faith Tort Claim. ................ 20

     ii.     FCIC Appeal and Arbitration are Reasonable Contract Expectations. ..................... 20

   C.    COUNT IV: STATUTORY BAD FAITH CLAIM IS PREEMPTED BY FEDERAL
    LAW AND OTHERWISE INADEQUATELY PLED. ........................................................... 22

     i.     Tennessee's Statutory Insurance Penalty Law is Federally Preempted as to Claims
    Concerning Federal Crop Insurance Policies ....................................................................... 22

     ii.     Policy Was Not Due and Payable Until After Arbitration. ....................................... 22

   D.    COUNT V: PLAINTIFFS FAILED TO ADEQUATELY PLEAD NEGLIGENCE,
    FRAUD, AND MISREPRESENTATION. ............................................................................. 24

IV.     CONCLUSION .............................................................................................. 25

## TABLE OF AUTHORITIES

### Cases

*Bell Atlantic v. Twombly*, 550 U.S. 544, 127 **S**. Ct. 1955, 167 L. Ed. 2d 929 (2007) .................. 2

*Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615 (Tenn. Ct. App. 1986) ................................. 20

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) ............. 6

*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99 (1957) ...................................................................... 2

*De Rossett Hat Co. v. London Lancashire Fire Ins. Co.*,
    134 Tenn. 199, 183 S.W. 720 (1915)..................................................................................... 23

*Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653 (Tenn. 2013)....................... 21

*Dixon v. Producers Agric. Ins. Co.*, 198 F. Supp. 3d 832 (M.D. Tenn. 2016) ............................ 11

*Farmers Crop Ins. Alliance v. Laux*, 442 F. Supp. 2d 488 (S.D. Ohio 2006) ............................. 11

*Federal Crop Ins. Corp v. Merrill*, 332 U.S. 380 (1947) ............................................................... 5

*Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433 (Tenn. Ct. App. 2004)............................... 22

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 128 S. Ct. 1396 (2008) ........................... 18

*Hillsborough County v. Automated Med. Lab., Inc.*, 471 U.S. 707 (1985) .................................... 9

*Hodge v. Craig*, 382 S.W.3d 325 (Tenn. 2012)........................................................................... 24

*Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888 (Tenn. Ct. App. 2000)........................................... 21

*Mancini, et al. v. Redland Insurance Co.*, 248 F.3d 729 (8th Cir. 2001) ....................................... 5

*Nobles v. Rural Community Ins. Services*, 122 F. Supp.2d 1290 (M.D. Ala. 2000)...................... 4

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
    461 U.S. 190 (1983).................................................................................................................7

*Pelzer v. Armtech Ins. Servs.*, 928 F. Supp. 2d 1071 (E.D. Ark. 2013)....................................... 11

*Plants, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02063-COA-R3-CV,
    2012 Tenn. App. LEXIS 562, (Tenn. Ct. App. Aug. 13, 2012)....................................... 11, 22

*Roberts v. Federal Crop Ins. Corp.*, 158 F. Supp. 688 (E.D. Wash. 1958)................................... 4

*Ryan v. Blackwell*, 979 F.3d 519 (6th Cir. 2020).......................................................................... 2

*Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434 (6th Cir. 1988). ................................. 2

*St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 129 Tenn. 55, 164 S.W. 1186 (1913) .............. 24

*Starr Indem. & Liab. Co. v. i3 Verticals, LLC*, No. 3:16-cv-2832,
    2018 U.S. Dist. LEXIS 132639 (M.D. Tenn. Aug. 7, 2018) ................................................ 20

*Stooksbury v. Am. Nat'l Prop. & Cas. Co.*, 126 S.W.3d 505 (Tenn. Ct. App. 2003) ................. 23

*Thompson v. Bank of Am., N.A.*, 773 F.3d 741 (6th Cir. 2014)................................................... 25

*Three T Nursery v. Rural Cmty. Ins. Agency, Inc.*, No. 4:11-cv-29,
    2012 U.S. Dist. LEXIS 96638 (E.D. Tenn. July 12, 2012)............................................... 13, 18

*TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987) .................................... 21

*Vaughn v. Producers Agric. Ins. Co.*, No. 1:14cv12-MW/GRJ,
    2014 U.S. Dist. LEXIS 187255 (N.D. Fla. Nov. 3, 2014)..................................................... 17

*Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301 (Tenn. 2008) ....................... 24, 25

*Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684 (Tenn. 1996) .......................................... 21

*Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.*,
    364 F. Supp. 3d 839, 845 (E.D. Tenn. 2019)........................................................................ 18

*Williams v. Berube & Assocs.*, 26 S.W.3d 640 (Tenn. Ct. App. 2000) ....................................... 25

*Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646 (M.D. Tenn. 2018) .............................................. 21

## Statutes

7 USC §1501, *et seq*..................................................................................................... 4, 7
7 USC §1506(l) ............................................................................................................ 5, 8
7 USC §1506(r) ............................................................................................................... 6
7 USC §1508(k)(1) ........................................................................................................... 4
7 USC §6933 .................................................................................................................... 4
9 USC §§ 9-11 ............................................................................................................... 18

## Rules

Fed. R. Civ. P. 12(b)(6)................................................................................................. 1, 2
Fed. R. Civ. P. 8(a)(2) ...................................................................................................... 2
Fed. R. Civ. P. 9(b) ........................................................................................................ 25

## Regulations

7 CFR §400.176 ............................................................................................... 8, 10, 11, 12
7 CFR §400.176(b) ........................................................................................................... 8
7 CFR §400.352 ...................................................................................................... passim
7 CFR §400.352(b) ...................................................................................................... 8, 22
7 CFR §400.766(b)(2)....................................................................................................... 5
7 CFR §457.8 (2017 Ed.) (the "MPCI Basic Provisions") ................................................ 4
7 CFR Part 400, Subpart X ............................................................................................... 6

## MPCI Basic Provisions (7 CFR §457.8)

¶14(f)............................................................................................................................. 16
¶20 ........................................................................................................................... 14, 18
¶20(b)(4)............................................................................................................... 5, 6, 13
¶20(d) ..................................................................................................................10, 14, 21
¶20(d)(1)(ii) ................................................................................................................... 14
¶20(h) ................................................................................................................... 9, 15, 16
¶20(i) ........................................................................................................................ passim
¶31 ............................................................................................................................ 9, 13
Preamble ........................................................................................................................... 4

## Final Agency Determinations

FAD-193 ........................................................................................................................... 9
FAD-195 ........................................................................................................................... 6
FAD-231 ........................................................................................................................... 6
FAD-240 ..............................................................................................................10, 11, 12
FAD-251 ....................................................................................................... 10, 11, 12, 13
FAD-280 ......................................................................................................................... 17
FAD-282 ......................................................................................................................... 17
FAD-298 ......................................................................................................................... 20

## Tennessee Statutes

56-7-105 .......................................................................................................... 20, 22, 23, 24

**GREAT AMERICAN INSURANCE COMPANY'S BRIEF IN SUPPORT OF
MOTION TO DISMISS PLAINTIFFS' COMPLAINT (COUNTS I, II, III, IV, AND V)**

Great American Insurance Company ("Great American") respectfully moves the Court to dismiss the entirety of Plaintiffs' Complaint (Doc. 1) pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

### A.    ISSUES PRESENTED

- Federal Crop Insurance Corporation denied Plaintiffs' request to lift the federal crop insurance policy's extracontractual claims prohibition. All claims are preempted.

- *Count I – Judicial Review (Section 20)* does not allege a plausible or non-speculative claim because Section 20 preempts state law and does not create an independent cause of action.

- *Count II – Tennessee State Law (Contract)* fails because Plaintiffs do not allege any specific breach, their allegations demonstrate full contract compliance and timely payment of all that was due in accordance with the contract terms, and federal law preempts any state law which might bear on the contract's requirements.

- *Count III – Tennessee State Law (Common Law Bad Faith)* demands relief for a claim which Tennessee law does not recognize, and which federal law preempts.

- *Count IV – Tennessee State Law (Statutory Bad Faith)* fails because the complaint demonstrates Plaintiffs' loss claims did not become due and payable until after arbitration concluded and they were then timely paid in accordance with the policy, and because federal law preempts this claim.

- *Count V – Tennessee State Law (Tort)* does not allege sufficient facts to state a plausible or non-speculative claim for negligence, fraud, or misrepresentation against Great American, and federal law preempts this claim.

1

## B.     STANDARD OF REVIEW

"A Rule 12(b)(6) motion tests whether a cognizable claim has been pleaded in the complaint." *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988). A complaint must have either direct or inferential allegations of all the material elements necessary for recovery. *Id.* A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *Ryan v. Blackwell*, 979 F.3d 519, 524 (6th Cir. 2020). And it must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 **S**. Ct. 1955, 167 L. Ed. 2d 929 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957). A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.**S**. at 555. Courts determining a complaint's sufficiency under the plausibility standard must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true. *Ryan v. Blackwell*, 979 F.3d 519 at 524.

## C.     SUMMARY OF KEY FACTS ALLEGED IN THE COMPLAINT

Great American issued federal crop insurance policies covering Plaintiffs' 2017 crops. (Complaint, Document 1, the "Complaint" at ¶7.) In early 2018, Great American determined that Plaintiffs failed to follow Good Farming Practices ("GFP") as defined in their policies and that such failures caused the Plaintiffs' tobacco production losses. (Complaint ¶¶10-12.) Failure to follow GFP is not an insured cause of loss. (Complaint ¶10). When a farmer disagrees with the amount of production Great American assigned to uninsured causes due to failure to follow GFP, the government-imposed policy contract requires use of a limited-scope arbitration process to determine the production amount which must be used in any final payment. (Complaint ¶¶13-14.) The parties followed that method in accordance with the government-imposed federal crop

2

insurance policy contract to resolve the Plaintiffs' disagreement with the initial loss determination. (Complaint ¶22.) In accordance with the policy contract, Plaintiffs first appealed Great American's GFP-failure determinations to the USDA Risk Management Agency (RMA). (Complaint ¶¶13-18.) RMA found some of the Plaintiffs' practices to be adequate, but ultimately it concluded that Plaintiffs did not follow GFP because they failed to implement appropriate post-emergence weed control measures. (Complaint ¶¶16-18.) The parties then proceeded with arbitration, and the Arbitrator determined that Plaintiffs' failure to follow GFP was not the cause of their crop losses. (Complaint ¶¶22-23.) The Arbitrator determined the final, binding facts and figures to be used in calculating the loss under the policy contract. (Complaint ¶24; see subparagraphs ¶¶92-99.) Great American immediately paid each of the Plaintiffs the amounts determined through that policy-required process. (Complaint ¶25.)

Notably, Plaintiffs do *not* allege several facts necessary to their claims:

- They do not identify any specific policy contract provisions or requirements that they allege Great American breached.

- They do not allege Great American failed to follow the policy's arbitration process for resolving disagreements about policy-necessary determinations.

- They do not allege Great American paid them less than the full amount each of them was entitled under the contract as soon as the arbitrator resolved the disagreements and determined the binding loss calculation parameters to be used.

- They do not allege their indemnity payments were untimely paid under the contract terms or that the policy required Great American to pay them sooner.

- They do not allege Great American owes them anything further under the policy.

- They identify no specific instances of negligence, fraud, or misrepresentation to

support their tort claims; they instead recite mere legal conclusions.
In short, those failings demonstrate that Plaintiffs have failed to state cognizable claims.

## II.     FEDERAL CROP INSURANCE POLICIES – LEGAL BACKGROUND
### A.          PLAINTIFF'S POLICY TERMS ARE FEDERAL LAW

Plaintiffs' Multiple Peril Crop Insurance policies are not typical insurance policies; rather, crop insurance is a federal benefit program delivered in the form of insurance, partly funded by the federal treasury. Congress created the Federal Crop Insurance Corporation (FCIC) as a corporate body in the Federal Crop Insurance Act (FCIA). See 7 USC §1501, *et seq*. Congress established FCIC to implement the FCIA by regulating premiums and policy terms, by defining the rights and obligations of the insurer and insured, by defining the terms of dispute resolution procedures under subject policies, and by reinsuring FCIC-created or FCIC-approved policies issued through private insurers. 7 USC § 1501, et seq. The USDA Risk Management Agency (RMA) administers FCIC. See 7 USC §6933. FCIC provides reinsurance and premium subsidies for federal crop insurance policies, including the Plaintiffs' 2017 MPCI policies. See the Preamble to the MPCI BP published at 7 CFR §457.8. [1] Also see 7 USC §1508(k)(1).

Federal law defines and governs the terms of the policies and governs any claims submitted thereunder. The regulations dictating the form of crop insurance policies issued by RMA have the force and effect of federal statute. *Roberts v. Federal Crop Ins. Corp.*, 158 F. Supp. 688, 694-695 (E.D. Wash. 1958); *Nobles v. Rural Community Ins. Services*, 122 F. Supp.2d 1290, 1294 (M.D. Ala. 2000).

FCIC promulgated the general provisions applicable to Plaintiffs' policies as regulations at 7 CFR §457.8 (2017 Ed.) (the "MPCI BP"), under the authority Congress granted in 7 USC

---

[1] Defendant references 7 CFR 457.8 (2017 Ed.) herein as the "MPCI BP."

§1506(l), which statute also makes those terms enforceable as federal law. Other crop-specific and county-specific policy provisions not relevant here also apply.[2]

Because federal crop insurance is a congressionally enacted program that subsidizes the cost of insurance coverage and uses federal funds, participants in the Federal Crop Insurance Program "*must turn square corners*" in strictly observing the terms and conditions defined by Congress and promulgated by the FCIC for charging the public treasury. *Federal Crop Ins. Corp v. Merrill*, 332 U.S. 380, 385 (1947). "Courts must strictly construe the statutory or regulatory limits upon disbursements of funds through federal insurance programs." *Mancini, et al. v. Redland Insurance Co.*, 248 F.3d. 729, 733 (8th Cir. 2001) (citing *Merrill*, 332 U.S. at 385-386) (court granted summary judgment for insurance company where no issue of fact that insured failed to strictly comply with terms of federal flood insurance policy).

### B. ONLY FCIC MAY INTERPRET THE POLICY.

Federal law gives FCIC exclusive authority to interpret the policy and procedure:

> In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR part 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.
>
> (MPCI BP ¶20(b)(4) (See 7 CFR §457.8) (2017 Ed.).)

FCIC issues its official and binding interpretations through Final Agency Determinations (FADs) which are binding upon all participants in the Federal Crop Insurance Program under the authority of 7 CFR §400.766(b)(2)[3] and under 7 USC §1506(r) (where Congress granted FCIC

---

[2] See, for example, the *Tobacco Crop Insurance Provisions* at 7 CFR §457.136 (2017 Ed.).

[3] "*All written final agency determinations issued by FCIC are binding on all participants in the Federal crop insurance program for the crop years the policy provisions are in effect. All written FCIC interpretations and testimony from an employee of RMA are binding on the parties to the dispute, including the arbitrator, mediator, judge, or NAD.*" See 7 CFR §400.766(b)(2). Prior to

5

that power). In addition to that authority, Plaintiffs agreed to be bound by such interpretations by entering into the insurance contract, which includes MPCI BP ¶20(b)(4) as a term of coverage. A FAD contains FCIC's official interpretations of its own regulations. Full text images of the FADs cited herein are attached with the pertinent parts highlighted.[4]

The import of ¶20(b)(4) and 7 CFR Part 400, Subpart X (which defines the FAD process) and 7 USC §1506(r) is that policy interpretation authority is reserved by law and regulation solely to FCIC, further demonstrating that this is not a typical insurance policy whose terms are subject to traditional notions of waiver or estoppel or judicial interpretation. And a reviewing court must defer to an agency's position as long as that the agency's action is reasonable. *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-843 (1984).

The FAD "process assures consistent interpretation of the same policy provisions that may not otherwise occur in arbitration, litigation, and NAD appeals [and] provides consistency in the program and ensures that all policyholders are treated alike." *See* FAD-195.[5] Earlier FADs remain binding until policy language changes occur. *See* FAD-231.[6]

### C.    FEDERAL LAW AND THE POLICY PREEMPT DAMAGES CLAIMS.

At the time the current preemption regulations were enacted in 2004, the FCIC considered completely preempting extra-contractual damages in connection with reinsured

---

a regulatory restructuring effective in 2019, the equivalent rule appeared at §400.765(c).

[4] Fed. R. Evid. 201 permits the court to take judicial notice of official publications from public authorities obtained from reliable internet sources, which are self-authenticating under Rule 902(5). *Thomas v. Haslam*, 303 F. Supp. 3d 585, 625 (M.D. Tenn. 2018). The attached FADs are published by the U.S.D.A. Risk Management Agency on its website.

[5] FAD-195 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://legacy.rma.usda.gov/regs/533/2013/fad-195.html.

[6] FAD-231 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://www.rma.usda.gov/Policy-and-Procedure/Final-Agency-Determinations/Basic-Provisions-20a-FAD-231.

policies but chose to limit the imposition of such damages to those situations where, in FCIC's judgment, the insurer or its agent or adjuster violated federal policy or procedure in the sale or servicing of the policy. In other words, the FCIC exercised its regulatory authority to function as a "gatekeeper" to the courthouse with respect to claims for extra-contractual damages. The FCIC explained its reasoning during the public comment phase of the rulemaking process:

> … FCIC agrees that insurance providers may have been at risk for punitive or extra contractual damages in litigations even though they may not have violated FCIC's policies or procedures. This risk poses a considerable program integrity issue[7] since it can affect the manner in which insurance providers manage their litigations and could result in increased costs to taxpayers. Therefore, FCIC has revised section 20, and made conforming amendments to 7 CFR 400.176(b) and 400.352(b)(4), to limit the imposition of punitive and other extra contractual damages, attorneys fees and other costs to those situations where FCIC has determined the insurance provider violated its policies and procedures and such violation had a monetary impact on the payment of the claim. FCIC will be making the determinations because, as authors of the policy or procedure, FCIC is in the best position to know whether an action constitutes a violation and to ensure the uniform application of the policies and procedures.
> (69 Fed. Reg. 48652, 48717 (Aug. 10, 2004).)

The Federal Crop Insurance Act (7 USC §1501, et seq.), its implementing regulations, and the policy terms specifically preempt or otherwise prohibit State law-based claims against federal crop insurers in a variety of ways. State law should be displaced by federal law to the extent there is a conflict. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 204 (1983). And there are many such conflicts here.

---

[7] Punitive and other extra-contractual damages impact program integrity because, unlike traditional state-regulated lines of insurance, federal crop insurance premiums are not expense loaded. The federally-subsidized premium does not include any factor above actuarially determined loss costs (as calculated by FCIC) that would otherwise be used to compensate a company for its delivery (including agent commissions) and service costs. FCIC also allows payment of an A&O Subsidy for policies that are sold and serviced in accordance with FCIC procedure and directives. A&O is defined in the SRA as "the subsidy for the administrative and operating expenses paid by FCIC on behalf of the policyholder to the Company for additional coverage level eligible crop insurance contracts in accordance with section 508(k)(4) of the Act…" The A&O Subsidy also does not factor in extra-contractual damages.

### i. 7 USC 1506(1)

The preemption provisions of the FCIA in 7 USC 1506(1) provide:

State and local laws or rules shall not apply to contracts, agreements, or
regulations of the Corporation or the parties thereto to the extent that such
contracts, agreements, or regulations provide that such laws or rules shall not
apply, or to the extent that such laws or rules are inconsistent with such contracts,
agreements, or regulations.
(7 USC §1506(l).)

### ii. Federal Crop Insurance Regulations (7 CFR Part 400)

Federal Crop Insurance regulations in 7 CFR Part 400 contain several provisions which

preempt claims against private insurance companies who issue federally-reinsured crop

insurance policies. For Plaintiffs' 2017 policies, 7 CFR §400.176(b) (2018 Ed.) generally forbids

claims for damages against a crop insurer except under limited circumstances where there has

been a culpable failure of the Company to substantially comply with FCIC procedures in the

handling of a claim or in the servicing of a policy.[8] And 7 CFR §400.352(b)[9] prohibits a court

from awarding extra-contractual damages absent an FCIC determination authorizing such

damages. Those terms and conditions preempt any contrary state laws that would otherwise

apply to insurance contracts. *Hillsborough County v. Automated Med. Lab., Inc.*, 471 U.S. 707,

---

[8] See attached copy of 7 CFR §400.176, which applied to pre-2019 policies, including Plaintiffs'
2017 policies. In 2018 FCIC revised Part 400 Subpart L at 83 Federal Register 51301, rendering
§400.176 inapplicable to future years' policies. MPCI BP ¶20(i) and 7 CFR §400.352(b) were
unchanged and continue to contain similar preemptive provisions applicable to 2019 and later.

[9] *See* 7 CFR 400.352(b) *"State or local governmental entities or non-governmental entities ...
may not: ...(4) Levy fines, judgments, punitive damages, compensatory damages, or judgments
for attorney fees or other costs against companies, ... arising out of actions or inactions on the
part of such individuals and entities authorized or required under the Federal Crop Insurance
Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or
by regulations, or procedures issued by the Corporation (Nothing herein precludes such
damages being imposed against the company if a determination is obtained from FCIC that the
company ... failed to comply with the terms of the policy or procedures issued by FCIC and such
failure resulted in the insured receiving a payment in an amount that is less than the amount to
which the insured was entitled);... ."*

713 (1985) (State law can be preempted by federal regulations as well as federal statutes).

Damages, attorney fees, expenses, or the like "can only be sought during an appeal to the courts, after an FCIC determination has been obtained ..." FAD-193.[10] No Court can award costs, fees, or any other damages to Plaintiffs without FCIC pre-approval. Here, FCIC refused permission for that (Doc. 39-1). And the administrative appeal didn't change that outcome (Doc. 54).

### iii. MPCI Basic Provisions ¶31

MPCI BP ¶31 ("Applicability of State and Local Statutes") also specifically preempts any conflicting state laws which might permit claims for damages:

> If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.
> (MPCI BP ¶31.)

### iv. MPCI Basic Provisions ¶20(h) and (i)

MPCI BP ¶20(h) and ¶20(i) do not allow a Court to award *any* extra-contractual damages regardless of the type of legal claim being asserted unless FCIC has issued a determination authorizing damages after an FCIC finding that prerequisite circumstances exist:

> (h) **Except as provided in section 20(i), no award** or settlement in mediation, arbitration, appeal, administrative review or reconsideration process or judicial review **can exceed the amount of liability established or which should have been established under the policy**, except for interest awarded in accordance with section 26.
>
> (i) In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us **only if you obtain a determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled**. ...
>
> (MPCI Basic Provisions ¶20(h) and (i). [**Emphasis** added.])

---

[10] FAD-193 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at  https://legacy.rma.usda.gov/regs/533/2013/fad-193.html.

### v. MPCI Basic Provisions ¶20(d)(1)(iii)

MPCI BP ¶20(d)(1)(iii) prohibits Plaintiffs from suing Great American "for [its] decisions regarding whether good farming practices were used." The policy tasks Great American with making GFP determinations but makes FCIC the final arbiter of those decisions.

### vi. FAD-240 and FAD-251 Confirm Preemption.

Crop insurance provisions, regulations, and related binding Final Agency Determinations (FADs) are not static. Prior case law regarding federal crop insurance-related claims must be compared against subsequent FADs because new binding FADs may negate the grounds upon which prior cases were decided, superseding and effectively overruling them via preemption. Several cases which might appear precedential as to permitting damages claims against crop insurers, such as *Pelzer*, *Plants*, and *Laux* (full cites below), are actually outdated and effectively overruled[11] due to subsequent FADs such as FAD-240[12] and FAD-251[13], which are discussed in further detail below. RMA published its interpretations of 7 CFR §400.176, the equivalent language in 20(i) of the Basic Provisions, and 7 CFR §400.352 in those FADs, indicating that the *Plants* and *Laux* analyses and the presumption regarding preemption upon which *Pelzer* is founded were incorrect. The portions of the *Plants* and *Laux* courts' rulings upon which the *Pelzer* case relied upon have since been rejected by FCIC in those FADs. See *Pelzer v. Armtech*

---

[11] An example of an outdated finding is the *Pelzer* court's statement that federal crop insurance regulations "*reveal no conflict with state law claims for negligence misrepresentation or fraud.*" See *Pelzer v. Armtech Ins. Servs.*, 928 F. Supp. 2d 1071, 1077 (E.D. Ark. 2013), quoting *Plants, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02063-COA-R3-CV, 2012 Tenn. App. LEXIS 562, (Tenn. Ct. App. Aug. 13, 2012).

[12] FAD-240 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://www.rma.usda.gov/en/Policy-and-Procedure/Requesting-a-Final-Agency-Determination-FAD-240.

[13] FAD-251 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations/7-CFR-Section-400-FAD-251.

*Ins. Servs.*, 928 F. Supp. 2d 1071, 1077 (E.D. Ark. 2013) (citing *Plants, Inc. v. Fireman's Fund Ins. Co.*, No. M2011-02063-COA-R3-CV, 2012 Tenn. App. LEXIS 562, (Tenn. Ct. App. Aug. 13, 2012), and *Farmers Crop Ins. Alliance v. Laux*, 442 F. Supp. 2d 488, 491 (S.D. Ohio 2006)).

*Plants* is especially notable since it is a Tennessee case in which the court somehow found no conflict between a farmer pursuing misrepresentation claims and the liability limitations in federal crop insurance law. But FCIC and this District Court have subsequently definitively stated that the law does not allow a court to award extra-contractual damages without FCIC permission. Per FCIC in FAD-240 and FAD-251, a FCIC determination is a prerequisite required before any extra-contractual damages may be awarded. And after considering FAD-240 and FAD-251, the Middle District of Tennessee agreed in 2016 that the policy and federal law prohibited any claims for damages related to a federal crop insurance policy, holding that "Plaintiffs must show damages that are unrelated the insurance policy because federal law preempts state-law claims regarding issues that involve a policy or procedure interpretation." *Dixon v. Producers Agric. Ins. Co.*, 198 F. Supp. 3d 832, 841 (M.D. Tenn. 2016).

### a. FAD-240

In FAD-240, which RMA published after the *Plants* cases, RMA made plain that awards not authorized by FCIC are in conflict with 7 CFR §400.176 and with section 20(i):

> FCIC also agrees that 7 CFR § 400.176(b), and the equivalent language in section 20(i) of the Basic Provisions preempts any state law claims that are in conflict. That means that to the extent that State law would allow a claim for extra-contractual damages, such State law is pre-empted and extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.
>
> To the extent that State courts have awarded extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with the law.
>
> (FAD-240.)

Also, in FAD-240 FCIC indicated that its requestor specifically asked FCIC to confirm

the *Plants* decisions were wrongly decided and incorrect, noting that (emphasis added):

> … recent case law from the Tennessee Court of Appeals (*Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 561 (Tenn. Ct. App. Aug. 13, 2012)), as well as another civil action between the same two parties, *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 562 (Tenn. Ct. App. Aug. 13, 2012)) addressing similar issues have held that neither 7 C.F.R. § 400.176(b) nor Basic Provisions section 20(i) preempts state law claims for misrepresentation, finding that no FCIC determination is necessary for a Federal crop insurance program participant to seek extra-contractual damages for misrepresentation in state court. **The requester believes that these court decisions are incorrect because they are counter to 7 CFR § 400.176 and the policy terms.**
>
> (FAD-240.)

FCIC confirmed it "agrees with the requestor" on that point, and it interpreted §400.176 to apply

to any claims "for which the factual basis includes a Federal crop insurance policy or any act that

an [insurer] undertook in relation to a policyholder's policy…." FAD-240.

In contrast, the *Plants* Court had previously held that §400.176 preempted certain claims

whose basis was the policy of insurance, but that claims for negligence, misrepresentation, and

fraud did not arise from the policy, and were instead alleged tortious actions taken prior to the

agreement being made or that occurred outside the policy's scope. FCIC disagreed in FAD-240:

> Any claim, including a claim for extra-contractual damages solely arising from a condition related to policies of insurance issued pursuant to the Federal Crop Insurance Act (Act), may only be awarded if a determination was obtained from FCIC in accordance with section 20(i) of the Basic Provisions and § 400.176(b).
>
> (FAD-240.)

### b. FAD-251

Similarly, and even more broadly, FCIC interpreted 7 CFR §400.352 in FAD-251 to

apply to "any claim, including a claim for extra-contractual damages, that arises under or is

related to a Federal crop insurance policy." FCIC further states that:

> [E]xtra-contractual damages … may only be awarded if a determination is

12

obtained from FCIC in accordance with section 20(i) of the … Basic Provisions and §400.352.

…

7 C.F.R. § 400.352 pre-empts any State law that would allow a claim for extra-contractual damages that conflicts with the provision in section 400.352 that any extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent, or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC.

(FAD-251.)

Simply put, FCIC considers all unauthorized extra-contractual damages awards to be in conflict with 7 CFR §400.352, and any prior court awards to the contrary to be in error:

To the extent that State courts award extra-contractual damages without first obtaining a determination from FCIC, such awards are not in accordance with 7 C.F.R. § 400.352 and FCIC regulations.

(FAD-251.)

### D.  THE POLICY TERMS ARE NOT WAIVABLE.

Both insurance providers and insureds are equally bound by the federally-mandated policy terms. The MPCI BP states that "[t]he provisions of the policy may not be waived or varied in any way by us … or any employee of USDA." (MPCI BP Preamble.) MPCI BP ¶31 states that the policy provisions preempt any contrary state and local laws and regulations. And since the federal government wrote the policy terms, not Great American, and MPCI BP ¶20(b)(4) prohibits the Court from interpreting it, the Court should not and cannot construe the policy terms against Great American. *Three T Nursery v. Rural Cmty. Ins. Agency, Inc.*, No. 4:11-cv-29, 2012 U.S. Dist. LEXIS 96638 at * 10, Fn. 4 (E.D. Tenn. July 12, 2012) (policy cannot be construed against crop insurer, as its terms are under exclusive FCIC control).

### E.  DEFINED CONTRACT METHODS APPLY TO RESOLVE CLAIM DISAGREEMENTS AND GOVERN WHEN PAYMENT IS DUE

The policy includes mandatory methods through which a policyholder may challenge

13

claim determinations and assigned production values with which it disagrees. The ability to challenge, modify, or reverse errors in or disagreements over initially adverse claims determinations through that process is a part of the policy contract design, and using that process is a fulfillment of the contract, not a breach. The policy anticipates such disagreements and their resolution. MPCI BP ¶20 (Doc. 1-2, pp. 34-35) defines those resolution methods, and ¶14(f) (Doc 1-2, p. 23) sets the claim payment deadline for 30 days after those processes complete.

For Good Farming Practices (GFP) controversies, there is an administrative decision-making and disagreement-resolution process defined in MPCI BP ¶20(d), which the Plaintiffs pursued with FCIC, to resolve questions about whether a policyholder's farming practice is a GFP. Here, FCIC agreed with one of Great American's GFP determinations, which became the final word on that issue under the policy method of reaching final determinations. Reconsideration of disagreements about GFP determinations through that process is, by design, the contractually-agreed method of how to get to the final claim decisions and numbers.

For all other disagreements the policyholder has with determinations the insurer makes under the contract, there is a required, contractually-agreed mechanism in the form of a limited-scope arbitration process contained in MPCI BP ¶20 and its many subparts. That mechanism allows the value of the loss or other facts necessary to the loss determination to be decided with binding finality when there is a dispute between the policyholder and insurer about those things. Here, for example, there was just such a dispute over how much of the losses were caused by uninsured or insured causes and what numbers and values should apply to any final payments which might be due to the Plaintiffs. The policy requires that disputes over the amount of production assigned to uninsured causes when a policyholder fails to follow GFP will be decided through the contract-required, limited-scope arbitration method. See MPCI BP ¶20(d)(1)(ii). The

parties followed that contract-required method to determine the amount of production loss to be assigned to uninsured GFP failures (none, as determined in the end) and the amounts to be paid.

The insurer making an adverse determination against the insured is not a breach of contract, regardless of how the company arrived at the adverse determination, because the policy itself provides the required method for getting to the proper outcome before any disagreed claim decision is truly final. The ¶20 limited-scope arbitration method is a process integral to the contract, not just a mere ADR requirement which might apply following a breach. It is the mandatory, final decision-making process required by the contract to which the parties agreed for resolving valuation and other disagreements *under* the contract. ¶20 of the contract does not say "all controversies" are subject to arbitration, but rather that disagreements "on any determination made by us" and "disputes involving determinations made by us" are subject to the process. It provides a contract-designated method to decide with finality the facts and numbers to be used in determining whether a payment is due under the contract and the amount of such payment when there is a disagreement about those things. It is analogous to the appraisement process which governs valuations in value-based insurance contracts, but its scope is broader than appraisement because it also establishes with finality other facts which are binding upon the insurance contract parties (such as the applicable cause of the loss). But it is a part of the contract which enables the parties to get to binding, final payment numbers, not a post-breach remedy.

The contract does not allow an arbitrator to award damages of any kind – any award must simply cause what is supposed to happen under the contract to happen, plugging in the factual and numeric findings the arbitrator makes as the inputs for that decision. See MPCI BP ¶20(h). Plainly, this is because arbitration is a decision-making mechanism which occurs within the bounds of the contract itself, whereas damages would be outside of it. The court should not

15

confuse an arbitrator's decision that an insurer's initial determination was incorrect with that incorrect decision being a breach of contract. The limited-scope arbitration process is the fruition of the contract's claim decision process, not a post-breach remedy. Treating every wrong-but-remedied-within-the-bounds-of-the-policy claim decision as a breach of contract would lead every disagreeing policyholder to claim favorable arbitration rulings entitle them to damages since they "got less" before the award than after its rendering. That is inconsistent with the processes for determination reconsideration and the damages limits which FCIC has imposed.

Notably, MPCI BP ¶14(f), which contains the contract terms governing when loss payments are owed, indicates that when the policyholder agrees the insurer's loss determination is correct, the right to payment matures upon reaching that agreement and the company must make payment within 30 days of that occurrence. But when the policyholder disagrees with the claim determination and follows the contractual processes in ¶20, the payment right does not mature until 30 days after completion of that process. See MPCI BP ¶14(f) (Doc. 1-2, at p. 23). As soon as the claim determination is set by that process, any loss payment due must be promptly paid – which, as Plaintiffs admit (Complaint ¶25), is exactly what happened here.

## III.    ARGUMENT

### A.    COUNT I:  SECTION 20 DOES NOT CREATE A RIGHT TO DAMAGES.

Plaintiffs' Count I claims do not exist, are otherwise preempted, and should be dismissed.

#### i. Section 20 Does Not Authorize an Independent Cause of Action.

Plaintiffs assert they are due extra-contractual damages through judicial review pursuant to MPCI BP ¶20(h) and (i) (see Doc. 1-2 at p. 35). But nothing in any part of ¶20 creates an affirmative right to relief. Rather, ¶20(h) and (i) preempt damages claims except when FCIC has issued a determination permitting a court to award damages *on some other claim*. ¶20(i) is

16

plainly a gatekeeper clause, not a font of financial relief. All claims against the insurer are completely preempted absent FCIC permission to pursue them.

Cases addressing the rather preposterous claim that ¶20(i) is itself a source of relief are understandably rare, but at least one federal district court in the Northern District of Florida has opined on the topic, holding that ¶20(i) does not support a cause of action disconnected from a claim for review of an arbitration award. *Vaughn v. Producers Agric. Ins. Co.*, No. 1:14cv12-MW/GRJ, 2014 U.S. Dist. LEXIS 187255 at *5 (N.D. Fla. Nov. 3, 2014).

FCIC has rendered interpretations in FADs in which it indicated a plaintiff would be unshackled from the prohibition on pursuing certain *state law* claims if FCIC were to issue a ¶20(i) determination. See, for example, FAD-280[14] and FAD-282.[15] But FCIC has never

---

[14] FAD-280 indicates (emphasis added): "… *7 C.F.R. § 400.176(b), and the equivalent language in section 20(i) of the Basic Provisions, preempts any state law claims that are in conflict. That means that **to the extent that State law would allow a claim for extra-contractual damages**, such State law is pre-empted and extra-contractual damages can only be awarded if FCIC makes a determination [allowing damages]. Therefore, this means that **state law claims** may be possible but recovery of extra-contractual damages is limited and the determination from FCIC must first be obtained.*" FAD-280 is attached hereto and is published on the RMA website at *https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations/Basic-Provisions-20b-FAD-280.*

[15] FAD-282 indicates (emphasis added): "… *FCIC has given effect to both sections 20(h) and 20(i) of the Basic Provisions. … arbitrators can only review contract claims, damages are limited to the liability under the policy, and arbitrators do not have the authority to consider equitable claims or award attorney's fees, expenses, or compensatory, punitive, or other extra-contractual damages. … **section 20(i) to authorize[s] courts to consider equitable claims and award attorney's fees, expenses, or compensatory, punitive, or other extra-contractual damages only if a determination is first obtained from FCIC** in accordance with 7 C.F.R. § 400.176. … there may be a need for both arbitration and judicial review when there are both contract and equitable claims, but **sections 20(h) and 20(i) of the Basic Provisions are clear, evident, and codified so they have the force of law**. As stated in the preamble to the Basic Provisions, even FCIC does not have the authority to waive or modify these requirements and the prior interpretations referenced above remain in effect.*" FAD-282 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at *https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations/Basic-Provisions-20h-FAD-282.*

17

suggested ¶20 creates a claim itself, nor has any court.

### ii. Plaintiffs Have Not Requested "Judicial Review" of the Award.

The U.S. Supreme Court has ruled that judicial review of an arbitrator's award is limited to the narrow review available under the Federal Arbitration Act (FAA). *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 587, 128 S. Ct. 1396, 1405 (2008). FAA sections 9 through 11 provide for expedited judicial review to confirm, vacate, or modify awards. 9 USC. §§ 9-11.

MPCI Basic Provisions ¶20 references "judicial review" several times, including in subparagraphs (b), (c), (h), and (i). When considering "judicial review" under Section 20(c), the Eastern District of Tennessee has held that policy language contemplates only the narrow review available under the FAA. *Three T Nursery v. Rural Cmty. Ins. Agency, Inc.*, No. 4:11-cv-29, 2012 U.S. Dist. LEXIS 96638 at * 9 (E.D. Tenn. July 12, 2012); *Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc.*, 364 F. Supp. 3d 839, 845 (E.D. Tenn. 2019). But Plaintiffs have not requested confirmation, vacatur, or modification of an arbitration award in this case, and therefore have not requested "judicial review" of the award.

If Plaintiffs seek some other species of judicial review unique to ¶20(i), they have explained no legal basis or support for it, and FCIC has not opined that ¶20(i) judicial review differs from FAA review. What ¶20(i) appears to contemplate is a situation where an arbitrator renders an award in which an innocent policyholder with a seemingly valid claim does not get an indemnity specifically because of the insurer's breach of contract or of some other legal duty – a breach or error which somehow sabotaged the coverage in an unfixable manner, preventing the arbitrator from awarding a claim payment because doing so would violate the nonwaivable policy terms. In a situation where the insurer's error frustrated the policy such that the policy's built-in disagreement resolution processes could not remedy the situation, the policyholder, who

18

received less than the amount to which he would have been entitled but for the insurer's error, might seek judicial review of the award and assert state law claims for relief in that proceeding – assuming FCIC provides permission to do so under ¶20(i). That is simply not the situation here. Plaintiffs sought relief under the policy's dispute resolution process and were awarded everything to which they were entitled under the policy.

### B.     COUNT II:  NO BREACH IS ACTUALLY ALLEGED

#### i.     Plaintiffs' Allegations Demonstrate No Breach at All

As noted above in Section II.E., the policy requires use of a limited-scope arbitration to determine the final, binding facts and numbers necessary to perform a loss calculation when the policyholder and the insurer disagree. These contract terms preempt any contrary state law.

Here, despite Plaintiffs' naked allegation of a breach of contract, they allege no facts demonstrating any breach, nor do they allege Great American failed to follow any policy provision or procedure to its letter. To the contrary, Plaintiffs allege Great American *followed* the contract: Great American made decisions[16] which the Plaintiffs contested using the policy's required disagreement-resolution method,[17] and Great American then participated in that loss-determination process in exactly the manner the contract requires,[18] abiding by the outcome[19] and paying the amounts determined to be due under the contract[20] as soon as the right to payment matured. The complaint is devoid of any facts which demonstrate Great American did not act in accordance with the contract and its deadlines. Thus, Plaintiffs allege compliance with the

---

[16] Complaint, ¶10.

[17] Complaint, ¶14.

[18] Complaint, ¶¶22-23.

[19] Complaint, ¶24 (which seemingly quotes from the award but which misstates portions of it by adding words not used or findings not made; see, for example, award ¶¶ 21, 50, 83, and 88).

[20] Complaint, ¶25.

contract, not a breach.

### ii.     Plaintiffs Allege No Breach

As noted above, Plaintiffs have not identified any particular contract provision that Great American allegedly did not follow. Moreover, Plaintiffs' breach of contract claim cannot rest on any allegations of failure to follow procedures in FCIC's Loss Adjustment Manual Standards Handbook ("LAM") because FCIC has made clear that "procedures established by FCIC in the LAM" are not "part of the contract between the AIP and the policyholder." FAD-298.[21]

Plaintiffs have shown no actual entitlement to relief, nor have they provided fair notice of the particulars of the facts underlying their breach of contract claim. And claims for damages are preempted by the policy and the regulations discussed above. Count II should be dismissed.

### B.     COUNT III:  DEFENDANT IS NOT LIABLE FOR BAD FAITH.

### i.     Tennessee Does Not Recognize a Common Law Bad Faith Tort Claim.

Tennessee does not recognize a tort claim for common law bad faith conduct by an insurer against an insured; the exclusive remedy for such alleged conduct is statutory, provided by T.C.A. § 56-7-105. *Starr Indem. & Liab. Co. v. i3 Verticals, LLC*, No. 3:16-cv-2832, 2018 U.S. Dist. LEXIS 132639 at *24-25 (M.D. Tenn. Aug. 7, 2018). In Tennessee, there is no tort of bad faith for failure to pay an insurance claim. *Chandler v. Prudential Ins. Co.*, 715 S.W.2d 615, 621 (Tenn. Ct. App. 1986). Since there is no such claim, the court must dismiss Count III.

### ii.     FCIC Appeal and Arbitration are Reasonable Contract Expectations.

"Tennessee law recognizes an implied covenant of good faith and fair dealing in every

---

[21] FAD-298 (highlighted for the Court's convenience) is attached hereto and is published on the RMA website at https://www.rma.usda.gov/en/Policy-and-Procedure/Final-Agency-Determinations/Preamble-14i-FAD-298.

contract." *Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 661 (Tenn. 2013).

"What this duty consists of, however, depends upon the individual contract in each case."

*Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996) (quoting *TSC Indus., Inc. v. Tomlin*, 743 S.W.2d 169, 173 (Tenn. Ct. App. 1987)). "The common law duty of good faith does not extend beyond the reasonable contractual expectations of the parties." *M & M Elec. Contractor, Inc. v. Cumberland Elec. Mbrshp. Corp.*, 529 S.W.3d 413 at 426. And an alleged breach of the implied covenant of good faith and fair dealing is not an independent claim, but rather is part of a breach of contract claim. *Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 699 (M.D. Tenn. 2018); *Lyons v. Farmers Ins. Exch.*, 26 S.W.3d 888, 894 (Tenn. Ct. App. 2000).

Plaintiffs suggest in Complaint ¶57 that Great American violated an implied duty of good faith and fair dealing and state that in the context of their bad faith tort claim, but clearly Tennessee law does not permit such a claim. And even if the claim were construed to be tied to the breach of contract claim, the policy provides Great American with the authority to make GFP determinations and requires any such determinations to be appealed to FCIC; and provides Great American with the authority to determine the amount of production to assign to GFP failures. MPCI BP ¶20(d). The policy requires the parties to resolve disagreements over such assigned production using the contractually required, limited-scope arbitration method discussed above. MPCI BP ¶20(d). Given that the contract plainly states it, the parties must have reasonably expected the FCIC appeal process and the possibility of arbitration to resolve disagreements over the amount of assigned production. That is exactly what happened here. The process was followed and the determined losses were paid. Accordingly, this claim must be dismissed.

Separately, any bad faith claim is also preempted by the policy terms and crop insurance regulations, for the reasons demonstrated above. See Section II.C. This claim should be

21

dismissed on those grounds too.

### C. COUNT IV: STATUTORY BAD FAITH CLAIM IS PREEMPTED BY FEDERAL LAW AND OTHERWISE INADEQUATELY PLED.

#### i. Tennessee's Statutory Insurance Penalty Law is Federally Preempted as to Claims Concerning Federal Crop Insurance Policies

Tennessee courts recognize that, in the context of federal crop insurance, "claims for breach of contract, breach of the duty of care, and statutory bad faith pursuant to Tennessee Code Annotated § 56-7-105 are preempted for they pertain to actions or inactions 'required or authorized' under the [Federal Crop Insurance Act], federal regulations, or the policy provisions." *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 562, at *34-35 (Ct. App. Aug. 13, 2012).[22] Also, as noted above, 7 CFR §400.352(b) prohibits states from levying various charges, penalties, or damages on federally reinsured insurance carriers. Plaintiffs' claims in Count IV are therefore preempted as a matter of law and should be dismissed.

#### ii. Policy Was Not Due and Payable Until After Arbitration.

The facts alleged also do not support imposition of a statutory penalty even if it were not otherwise preempted. "Tenn. Code Ann. § 56-7-105(a) is penal in nature and must be strictly construed." *Ginn v. Am. Heritage Life Ins. Co.*, 173 S.W.3d 433, 443 (Tenn. Ct. App. 2004). To recover bad faith penalties under that statute, a plaintiff must prove that: "(1) the policy of insurance must, by its terms, have become due and payable, (2) a formal demand for payment must have been made, (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days), and (4) the refusal to pay must not have been in good faith." *Id.*, quoting *Stooksbury v. Am. Nat'l Prop. &*

---

[22] As noted above, FCIC indicated in FAD-240 and FAD-251 that *Plants* was incorrect as to its allowance of certain claims. But on this point, it is correct and remains good law in Tennessee.

*Cas. Co.*, 126 S.W.3d 505, 519 (Tenn. Ct. App. 2003).

      The policy provisions here anticipate that policyholders and insurance companies will

have disagreements regarding loss payments. Payment of an indemnity under the policy is not

owed until one of these things in MPCI BP ¶14(f) has occurred:

> **14. Duties in the Event of Damage, Loss, Abandonment, Destruction, or Alternative Use of Crop or Acreage:**
> ...
> (f) If you have complied with all the policy provisions, **we will pay your loss within 30 days after the later of**:
>   (1) **We reach agreement with you**;
>   (2) **Completion of arbitration, reconsideration of determinations regarding good farming practices or any other appeal that results in an award in your favor,** unless we exercise our right to appeal such decision; …
>
> MPCI BP ¶14(f) (emphasis added).

Thus, payment was not due until completion of arbitration; any contrary state law is preempted.

      Moreover, for more than a century, Tennessee courts have held that the right to payment

under a policy of insurance must have actually matured before the requisite TCA § 56-7-105(a)

demand for payment is made and the 60-day pay-or-be-penalized waiting period commences. A

demand for payment made *before* maturity is not a sufficient demand under the penalty statute.

See *De Rossett Hat Co. v. London Lancashire Fire Ins. Co.*, 134 Tenn. 199, 183 S.W. 720 (1915)

(applying what is now TCA § 56-7-105(a)). And when a policy contract provides its own dispute

mechanism, such as arbitration or appraisement, for determining and fixing the value of the loss

when there is a dispute between the policyholder and insurer, Tennessee courts have applied the

rule that maturity occurs only after that dispute resolution process is complete: "Where proofs of

loss are furnished, and no demand is made for arbitration, the policy matures at the expiration of

the number of days fixed for maturement in the policy after such submission of proofs. [But

where] the policy provides for payment after the lapse of a given number of days after the filing

of an award, where an arbitration has been demanded, the date of maturity, for the purposes of

the present statute, would be governed by the number of days so fixed in the contract." *St. Paul Fire & Marine Ins. Co. v. Kirkpatrick*, 129 Tenn. 55, 69-70, 164 S.W. 1186, 1190 (1913). The latter is exactly the situation the Court faces here. Plaintiffs and Great American disagreed over the value and extent of the loss, and they followed the method defined in the contract to resolve that disagreement, which resulted in an arbitration award, after which the right to payment matured. The Complaint does not allege otherwise.

Great American fulfilled its contractual duty to pay the indemnities once the parties completed arbitration as required by the policy. It paid immediately after the award was rendered. No policy provision required payment before that under the circumstances here, and there is no allegation in the complaint of a post-maturity demand or of any delayed payment. Plaintiffs' claims in Count IV were never mature and they have pled sufficient grounds to support the relief they seek under TCA § 56-7-105(a). Count IV should be dismissed.

### D.   COUNT V:  PLAINTIFFS FAILED TO ADEQUATELY PLEAD NEGLIGENCE, FRAUD, AND MISREPRESENTATION.

In Tennessee, fraud, fraudulent misrepresentation, and intentional misrepresentation are different names for the same action. *Hodge v. Craig*, 382 S.W.3d 325, 342 (Tenn. 2012). To establish a claim for fraudulent or intentional misrepresentation, a plaintiff must show: 1) the defendant made a representation of an existing or past fact; 2) which was false when made; 3) and which was in regard to a material fact; 4) and was made either knowingly, or without belief in its truth, or recklessly; 5) and plaintiff reasonably relied on the misrepresented material fact; and 6) plaintiff suffered damage as a result of the misrepresentation. *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008). To succeed on a claim for negligent misrepresentation, a plaintiff must establish "that the defendant supplied information to the plaintiff; the information was false; the defendant did not exercise reasonable care in obtaining or

24

communicating the information and the plaintiffs justifiably relied on the information." *Id*. (quoting *Williams v. Berube & Assocs.*, 26 S.W.3d 640, 645 (Tenn. Ct. App. 2000)).

Each of these legal theories requires Plaintiffs to establish that Great American "made a false statement of material fact that is designed to induce the plaintiff to rely on it." *Thompson v. Bank of Am.,* N.A., 773 F.3d 741, 752 (6th Cir. 2014). Plaintiffs have not alleged any false or misleading statements of material fact by Great American. Plaintiffs' allegations center on Great American's GFP determination and its assignment of the amount of production to uninsured causes, but Plaintiffs do not allege that Great American supplied information to Plaintiffs that was false or misleading, much less that Plaintiffs relied on such information.

Claims for common-law fraud or for fraudulent or negligent misrepresentation must comply with Fed. R. Civ. P. 9(b). *Thompson v. Bank of Am., N.A.*, 773 F.3d 741 at 751. Plaintiffs must (1) specify the time, place, and content of the alleged misrepresentation, (2) identify the fraudulent scheme and the fraudulent intent of the defendant, and (3) describe the injury resulting from the fraud to satisfy Fed. R. Civ. P. 9(b) . *Thompson v. Bank of Am.*, N.A., 773 F.3d 741 at 751. None of those particularity requirements are met here, and claims for damages are preempted as discussed above. See Section II.C. Count V should be dismissed.

IV.     **CONCLUSION**

For these reasons, Great American hereby respectfully requests that the Court dismiss Plaintiffs' Complaint with prejudice, as to all Counts asserted.

Respectfully submitted,

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr., Esq.
(OH Bar No. 0073531)
(*admitted pro hac vice*):
**SANDERS & ASSOCIATES, LPA**
8040 Hosbrook Road, Suite 202
Cincinnati, OH 45236
Phone:  (513) 229-8080
Fax: (513) 229-8081
TomJames@SandersLPA.com

*s/ Brigid M. Carpenter*
Brigid M. Carpenter (TN BPR #018134)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee  37201
(615) 726-7341 (telephone)
(615) 744-7341 (facsimile)
bcarpenter@bakerdonelson.com

**Attorneys for Defendant Great American**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that he served a copy of the foregoing through the Court's Electronic Case Filing System (CM/ECF), upon Plaintiffs' attorney, Wendell L. Hoskins II, Law Office of Wendell L. Hoskins II, 404 Ward Ave., P.O. Box 1115, Caruthersville, MO 63830 (Wendell@WendellHoskins.com), this 18th day of January 2024.

*s/ Thomas C. James, Jr.*
Thomas C. James, Jr.

26