UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| DANIEL GENE BOZE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) No. 2:21-cv-00002 |
| | ) |
| GREAT AMERICAN INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Daniel Gene Boze, Jimmy Joe Boze, and the Estate of Mary Ruth Boze ("Plaintiffs"), bring suit against Great American Insurance Company ("GAIC"). (Doc. No. 1). This case arises out of an insurance dispute. Plaintiffs contend GAIC failed to comply with the terms of the applicable insurance policies. Plaintiffs bring suit seeking judicial review and remedies for various Tennessee state law claims. Before the Court is GAIC's Motion to Dismiss (Doc. No. 58), which has been fully briefed and is ripe for review (Doc. Nos. 58, 59, 63, 65). GAIC also filed a Motion for Oral Argument on its Motion to Dismiss (Doc. No. 60). Plaintiffs filed a Response to GAIC's Motion for Oral Argument requesting the same (Doc. No. 64). For the following reasons, the Court will grant GAIC's Motion to Dismiss (Doc. No. 58) and will deny its Motion for Oral Argument as moot (Doc. No. 60).

**I. BACKGROUND AND FACTUAL ALLEGATIONS[1]**

Plaintiffs and the late Joe Boze were three Burley tobacco farmers in Carthage, Tennessee. They were the insureds under three separate multi-peril crop insurance ("MPCI") policies by GAIC

---

[1] The Court draws the facts in this section from the Complaint (Doc. No. 1) and the attached exhibits and assumes the truth of those facts for purposes of ruling on the instant motion. See

in 2017 (collectively, the "Policies").[2] (Doc. No. 1 ¶¶ 7, 12). The Policies were issued subject to the Federal Crop Insurance Act ("the Act"), 7 U.S.C. § 1501 et seq., and corresponding regulations under Title VII, Chapter IV of the Code of Federal Regulations. The Policies are reinsured by the Federal Crop Insurance Corporation ("FCIC"), an agency managed by the Risk Management Agency ("RMA") of the U.S. Department of Agriculture. (See Doc. No. 1-2 at 2).

After Plaintiffs' tobacco crops were damaged in 2017, they submitted claims to GAIC under their respective policies to be indemnified for their crop loss. (Doc. No. 1 ¶¶ 10, 12). When GAIC received those claims, it was obligated under the Policies and applicable regulations to determine whether, and how much of, Plaintiffs' crop losses were a result of a failure to follow good farming practices ("GFP") as defined in the Policies. (Id. ¶ 13). GAIC's initial GFP determination was that all of Plaintiffs' crop losses came from their various failures to follow good farming practices, thus denying all their claims. (Id. ¶¶ 10, 12). Each of the Policies contained two clauses to contest GAIC's GFP determination. First, if the insured disagreed with GAIC's decision on whether the insured followed GFP, the insured could request a GFP determination from FCIC. (Id. ¶ 14). Second, if an insured disagreed with GAIC's determination of the amount

---

Erickson v. Pardus, 551 U.S. 89, 94 (2007). The Court also draws facts from the RMA's Response to Request for Section 20(i) Determination (Doc. No. 39-1), the National Appeals Division's Appeal Determination (Doc. No. 54-1), and the National Appeals Division's Director Review Determination (Doc. No. 54-2), which it may properly consider for the purposes of GAIC's Rule 12(b)(6) motion. Armengau v. Cline, 7 F. App'x 336, 344 (6th Cir. 2001) (courts may consider letter decisions of governmental agencies when ruling on a Rule 12(b)(6) motion).

[2] Mary Ruth Boze assumed all rights and interest in the MPCI policy belonging to her husband, Joe Boze, upon his death. (Doc. No. 1 ¶ 8). Mary Ruth Boze has passed away since the Complaint was filed; Jimmy Joe Boze and Nita Lee Reid, as Co-Personal Representatives of the Estate of Mary Ruth Boze and the successors-in-interest in and to the causes of action asserted here, have been substituted as Plaintiffs for the late Mary Ruth Boze in this action. (Doc. Nos. 37, 38).

of crop loss assigned as indemnified based on the GFP determination, the insured needed to challenge that determination in arbitration. (Id.).

Plaintiffs challenged GAIC's GFP decision first by filing formal requests with the RMA. (Id. ¶ 15). The RMA concluded that GAIC's GFP decision was a mixed bag: GAIC incorrectly found Plaintiffs did not follow good farming practices in some respects, but correctly found Plaintiffs violated the good farming practices provision in others. (Id. ¶¶ 16, 17). The RMA also noted Plaintiffs' failure to follow the recognized GFP may not be the only reason Plaintiffs suffered tobacco crop losses, but it did not decide whether Plaintiffs were entitled to indemnity. (Id. ¶ 18). Upon the RMA's GFP decision, GAIC did not reassess their initial GFP determination to determine whether any of Plaintiffs' crop losses were subject to indemnity. (Id. ¶ 19). Plaintiffs then challenged GAIC's GFP determination in arbitration. (Id. ¶ 22). The arbitrator decided that to the extent Plaintiffs failed to follow GFP, those failures were not the cause of Plaintiffs' crop losses. (Id. ¶ 23). Accordingly, the arbitrator concluded that Plaintiffs were entitled to indemnity for their crop losses in the following amounts: Daniel Boze: $458,759.00; Jimmy Joe Boze: $295,985.00; and Mary Ruth Boze: $402,393.00. (Id. ¶ 24). The arbitrator also awarded Plaintiffs interest in the amounts of: Daniel Boze: $26,237.24; Jimmy Joe Boze: $16,927.88; and Mary Ruth Boze: $23,013.59. (Id.). GAIC paid Plaintiffs in accordance with the arbitration award. (Id.).

Sections 20(h) and (i) of the Policies' Basic Provisions provide for further appeals procedures relating to the conduct of private insurers under the Policies, which state:

> (h) Except as provided in section 20(i), no award or settlement in mediation, arbitration, appeal, administrative review or reconsideration process or judicial review can exceed the amount of liability established or which should have been established under the policy, except for interest awarded in accordance with section 26.
>
> (i) In a judicial review only, you may recover attorneys fees or other expenses, or any punitive, compensatory or any other damages from us only if you obtain a

3

Case 2:21-cv-00002    Document 66    Filed 09/26/24    Page 3 of 16 PageID #: 628

> determination from FCIC that we, our agent or loss adjuster failed to comply with the terms of this policy or procedures issued by FCIC and such failure resulted in you receiving a payment in an amount that is less than the amount to which you were entitled.

(Id. ¶¶ 26, 28). On January 26, 2021, Plaintiffs filed the instant suit, seeking judicial review pursuant to Section 20(i) of the Policies, and alleging Tennessee breach of contract, common law bad faith, statutory bad faith, and tort violations against GAIC. (Doc. No. 1 ¶¶ 36–81). That same day, Plaintiffs requested a determination from FCIC pursuant to Section 20(i) that GAIC failed to comply with the terms of the Policies or procedures issued by FCIC. Plaintiffs believe that this resulted in them receiving a payment in an amount that is less than the amount they were entitled to. (Id. ¶ 27; Doc. No. 1-4). The RMA denied Plaintiffs' requested Section 20(i) determination, finding "no proof that [GAIC] failed to comply with FCIC policies and procedures, and [Plaintiffs] received the total amount [] entitled to under [the] polic[ies]." (Doc. No. 39-1 at 1).

Plaintiffs appealed the RMA's decision to the National Appeals Division, where the Administrative Law Judge ("ALJ") found that the RMA erred on the issue of GAIC's compliance with FCIC policies and procedures. The ALJ specifically found that GAIC acted willfully and egregiously in not re-evaluating its initial GFP determination after the RMA made its GFP decision. (Doc. No. 54-1 at 50). However, the ALJ found the RMA did not err on its determination that Plaintiffs received "the full indemnity due under their policies, with interest" and so the RMA's decision denying Plaintiffs' request for a Section 20(i) finding was not erroneous. (Doc. No. 54-1 at 51). Plaintiffs again appealed the ALJ's decision to the National Appeals Division's Director for review. The Director found the ALJ's determination that GAIC willfully and egregiously violated the FCIC was not supported by substantial evidence. However, on the ultimate determination that the "RMA properly denied [Plaintiffs'] request for a Section 20(i) determination because [Plaintiffs'] received the total indemnity due to them" was supported by

4

substantial evidence. (Doc. No. 54-2 at 65). GAIC then filed the pending motion to dismiss (Doc. No. 58).

## II.  LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)). When determining whether the complaint meets this standard, the Court must accept all the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018); see also Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). The Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). And "[w]hile the complaint does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions" or "a formulaic recitation of a cause of action's elements[.]" Blackwell, 979 F.3d at 524 (internal quotations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, in evaluating a motion to dismiss, the Court may consider the complaint and the exhibits attached. Bassett v. Nat'l Collegiate Athletic Ass'n, 528 F.3d 426, 430 (6th Cir. 2008). Further, "[a]t this preliminary stage in litigation," courts may also consider "letter decisions of governmental agencies" as matters that fall within the pleadings for the purposes of Rule 12(b)(6). Armengau, 7 F. App'x at 344 (citing Jackson v. City of Columbus, 194 F.3d 737, 745 (6th Cir. 1999)).

5

## III. FEDERAL CROP INSURANCE

The crop insurance Policies at issue in this case were dispensed subject to the Act. The federal government, through FCIC, "has been in the business of providing crop insurance directly to farmers since the 1930s." Bachman Sunny Hill Fruit Farms, Inc. v. Producers Agric. Ins. Co., 57 F.4th 536, 538 (6th Cir. 2023). "And ever since Congress enacted the Federal Crop Insurance Act of 1980, the FCIC and its administrator, the Risk Management Agency, have also reinsured policies offered to farmers by private insurers." Id. (citing Ackerman v. U.S. Dep't of Agric., 995 F.3d 528, 529 (6th Cir. 2021). This federal reinsurance program allows FCIC to "provide reimbursement, subsidies, and reinsurance for approved crop-insurance policies." Id. (citing Stephanie Rosch, Cong. Rsch. Serv., R46686, Federal Crop Insurance: A Primer, 25 (2021)).

These federally insured crop-insurance policies "are not typical private insurance agreements." Bachman Sunny Hill Fruit Farms, 5 F.4th at 538 (internal quotation omitted). "[E]ach contract is 'between a farmer and an insurance provider,' but 'the FCIC determines the terms and conditions' of the policy." Id. at 538–39 (6th Cir. 2023) (quoting Balvin v. Rain & Hail, LLC, 943 F.3d 1134, 1136 (8th Cir. 2019)). In fact, the terms of the Policies Plaintiffs bought from GAIC are set out in full in the Code of Federal Regulations. See 7 C.F.R. §457.8. Only the FCIC may interpret these insurance policies and procedures:

> In any suit, if the dispute in any way involves a policy or procedure interpretation, regarding whether a specific policy provision or procedure is applicable to the situation, how it is applicable, or the meaning of any policy provision or procedure, an interpretation must be obtained from FCIC in accordance with 7 CFR 400, subpart X or such other procedures as established by FCIC. Such interpretation will be binding.

7 C.F.R. § 457.8.

## IV. ANALYSIS

GAIC asserts all of Plaintiffs' claims against it must be dismissed because: (1) Plaintiffs' claims are preempted by federal law; and (2) none of Plaintiffs' claims state a cause of action for which relief can be granted. (Doc. No. 59 at 1). The Court will address each of these issues in turn.

The parties dispute whether Plaintiffs' claims are preempted by federal law. GAIC contends that Plaintiffs' claims conflict with, and are therefore barred by, the Act, its implementing regulations, and the Policies' terms. (Doc. No. 59 at 7; see e.g., id. at 8 (citing to 7 U.S.C. § 1506(1), the Act's preemption provision), 9 (citing to Sections 20 and 31 of the Policies that relate to FCIC's determination authorizing damages and state law preemption, respectively), 10–12 (citing to final agency determinations ("FAD") FAD-240 and FAD-251 that provide a court may not award extra-contractual damages without FCIC permission)). Plaintiffs counter that they have "preserved and perfected their available remedies" for their claims such that federal preemption is not an impediment to their recovery. (Doc. No. 63 at 14).

"Federal preemption draws its force from the Supremacy Clause of the United States Constitution." Wimbush v. Wyeth, 619 F.3d 632, 642 (6th Cir. 2010) (citing U.S. Const. art. 6, cl. 2). Although a number of species of preemption have been recognized by the federal courts, see United Auto., Aerospace & Agric. Implement Workers of Am. Local 3047 v. Hardin Cty., Ky., 842 F.3d 407, 418 (6th Cir. 2016), GAIC relies solely on a theory of conflict preemption. (Doc. No. 59 at 7 ("State law should be displaced by federal law to the extent there is a conflict. . . [a]nd there are many such conflicts here.")). "[C]onflict pre-emption exists where 'compliance with both state and federal law is impossible,' or where 'the state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' In either situation, federal law must prevail." Oneok, Inc. v. Learjet, Inc., 575 U.S. 373, 377

(2015) (quoting California v. ARC Am. Corp., 490 U.S. 93, 100–01 (1989)). Federal regulations have the same preemptive effect as federal statutes. McCauley v. Home Loan Inv. Bank, F.S.B., 710 F.3d 551, 554 (4th Cir. 2013) (citing Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta, 458 U.S. 141,153 (1982). "Here, as in every preemption case, '[t]he purpose of Congress is the ultimate touchstone.'" Wimbush, 619 F.3d at 642 (internal citation omitted). "In line with the standards governing motions for dismissal, a defendant bears the burden of proof establishing preemption as grounds for dismissal." In re Ford Motor Co. F-150 & Ranger Truck Fuel Econ. Mktg. & Sales Pracs. Litig., 65 F.4th 851, 859 (6th Cir. 2023) (citing Brown v. Earthboard Sports USA, Inc., 481 F.3d 901, 912 (6th Cir. 2007)).

All policies of insurance by FCIC are governed by regulations which preempt state laws and regulations not consistent with the Act. Among the preemptive regulations, 7 C.F.R. § 400 subpart P prohibits "[s]tate or local governmental entities or non-governmental entities" from levying:

> fines, judgments, punitive damages, compensatory damages, or judgments for attorney fees or other costs against companies, employees of companies including agents and loss adjustors, or Federal employees arising out of actions or inactions on the part of such individuals and entities authorized or required under the Federal Crop Insurance Act, the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations, or procedures issued by the Corporation.

7 C.F.R. § 400.352. Subpart P is "applicable to all policies of insurance," 7 C.F.R. § 400.351, including the subject Policies. In addition, FCIC has also included preemption language in all insurance contracts authorized under the Act. For the Policies, that preemption language is found in Sections 20(f) and 31, which provide in relevant part:

**20. Mediation, Arbitration, Appeal, Reconsideration, and Administrative and Judicial Review.**

(f) In any mediation, arbitration, appeal, administrative review, reconsideration or judicial process, the terms of this policy, the Act, and the regulations published at 7 CFR chapter IV, including the provisions of 7 CFR part 400, subpart P, are binding. Conflicts between this policy and any state or local laws will be resolved in accordance with section 31. If there are conflicts between any rules of the AAA and the provisions of your policy, the provisions of your policy will control.

**30. Applicability of State and Local Statutes.**

If the provisions of this policy conflict with statutes of the State or locality in which this policy is issued, the policy provisions will prevail. State and local laws and regulations in conflict with federal statutes, this policy, and the applicable regulations do not apply to this policy.

(Doc. No. 1-2 at 35, 38).

However, the Act does not preempt all state law claims. See Holman v. Laulo–Rowe Agency, 994 F.2d 666, 669 (9th Cir. 1993) (no complete preemption of state law claims pertaining to Act-issued crop insurance); Meyer v. Conlon, 162 F.3d 1264, 1269 (10th Cir. 1998) ("Congress has not expressed a clear intent to preempt all state law causes of action against private reinsurers."). Instead, the Court must determine if Plaintiffs' asserted claims interfere with or are contrary to the Act, its regulations, and policies. To determine this, FAD-240 provides pertinent instruction:

> Any claim, including a claim for extra-contractual damages solely arising from a condition related to policies of insurance pursuant to the Federal Crop Insurance Act (Act), may only be awarded if a determination was obtained from FCIC in accordance with section 20(i) of the Basic Provisions and § 400.176(b).
>
> FCIC also agrees that 7 C.F.R. § 400.176(b), and the equivalent language in section 20(i) of the Basic Provisions preempts any state law claims that are in conflict. That means that to the extent that State law would allow a claim for extra-contractual damages, such State law is pre-empted and extra-contractual damages can only be awarded *if FCIC makes a determination that the [Approved Insurance Provider]["AIP"], agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the*
9

> *insured receiving a payment in an amount that is less than the amount to which the insured was entitled.*

FAD-240 (emphasis added); see also FAD-251 (citing to FAD-240 for the proposition that extra-contractual damages can only be awarded if the FCIC makes a determination that the AIP, agent or loss adjuster failed to comply with the policy terms).[3] Further, section 400.352(b)(4) of subpart P provides:

> Nothing herein precludes such damages being imposed against the company if a determination is obtained from FCIC that the company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by FCIC and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled.

7 C.F.R. § 400.352(b)(4). Thus, according to subpart P, the only manner that an AIP, such as GAIC, can be assessed extra-contractual damages in connection with the issuance or administration of the Policies is if the insured obtains preauthorization, in the form of an express determination of non-compliance, from FCIC. Section 20(i) of the Basic Provisions of the Policies is consistent with this. See supra, Section I. By its express terms, Section 20(i) requires a determination from FCIC prior to recovering extra-contractual damages for claims in connection with Policies. See 7 C.F.R. § 457.8 ¶ 20(i).

The parties largely agree as to Section 20(i)'s applicability to the claims at issue. While not addressed directly in their briefing, the parties do not appear to dispute that the claims at issue concern the issuance or administration of the Policies. (See generally, Doc. Nos. 59, 63, 65). In

---

[3] 7 C.F.R. § 400.176(b) provides "[n]o policy of insurance reinsured by the Corporation and no claim, settlement, or adjustment action with respect to any such policy shall provide a basis for a claim of punitive or compensatory damages or an award of attorney fees or other costs against the Company issuing such policy, unless a determination is obtained from the Corporation that the Company, its employee, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled."

fact, the parties seem to take this as a given, as both focus their attention on the import of the Policies' and regulations' Section 20(i) determination requirement. (Doc. No. 59 at 6–13; Doc. No. 63 at 11–14). Nor do the parties dispute that FCIC has found, on three different occasions, that Plaintiffs are not entitled to a Section 20(i) non-compliance determination because Plaintiffs received the full payments they were entitled to under the Policies. (Doc. No. 59 at 9; Doc. No. 63 at 14; Doc. No. 39-1 at 1; Doc. No. 54-1 at 51; Doc. No. 54-2 at 65).

The parties' disagreement lies in the relevance of FCIC's refusal to issue a non-compliance Section 20(i) determination. GAIC contends that because FCIC did not grant Plaintiffs a favorable Section 20(i) determination, they have not satisfied the Policies- and regulations-mandated prerequisite to pursue extra-contractual damages from GAIC. Therefore, any claims for such damages are preempted. (Doc. No. 59 at 11–13). Plaintiffs make two main arguments countering GAIC's assertion that the unfavorable FCIC decision bars their claims: (1) Plaintiffs' tort claims are not subject to this Section 20(i) determination because they are not preempted by the Act, its federal regulations, or policy terms; and (2) Plaintiffs needed only to seek a determination, not necessarily a favorable one, from FCIC to pursue their claims.[4] (Doc. No. 63 at 11–14). Neither argument is convincing.

Plaintiffs' first argument, that their tort claims are not preempted by the Act, is unavailing. Plaintiffs rely on <u>Plants, Inc. v. Fireman's Fund Ins. Co.</u>, 2012 WL 3291805 (Tenn. Ct. App. Aug. 13, 2012), and its progeny <u>Pelzer v. ARMtech Ins. Servs., Inc.</u>, 928 F. Supp. 2d 1071 (E.D. Ark. 2013), to support this assertion. The court in <u>Plants</u> held that the Act only preempted state law

---

[4] The Court understands Plaintiffs also contend their "judicial review" claim is rooted in federal law, presumably because it originates under the Act, and is therefore not preempted. (Doc. No. 36 at 13, 15). However, Plaintiffs provide no argument establishing the Act provides them with a private right of action. (<u>See generally id.</u>). The Court finds this argument is without merit.

11

contract claims against an insurer, but not tort claims. 2012 WL 3291805, at *11. However, GAIC correctly points that that since these cases were decided, the Plants position has been written out of and is no longer in accord with standard policy terms and regulations. FAD-251 provides:

> The requester notes that recent case law from the Tennessee Court of Appeals (*Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 561 (Tenn. Ct. App. Aug. 13, 2012), as well as another civil action between the same two parties, *Plants, Inc. v. Fireman's Fund Ins. Co.*, 2012 Tenn. App. LEXIS 562 (Tenn. Ct. App. Aug. 13, 2012)) found that 7 CFR § 400.352(b)(4) did not apply when a policyholder seeks extra-contractual damages for alleged negligence or misrepresentations regarding the policy or the applicability of a policy to a crop. The requester believes that the court's interpretation of 7 CFR § 400.352(b)(4) in the *Plants* cases is wrong, and that the requester's interpretation above is the correct one. FCIC recently agreed in FAD-240 that the *Plants* decisions were incorrect because they were counter to 7 CFR § 400.176 and the policy terms. Those *Plants* decisions are also incorrect because they are counter to § 400.352.

FAD-251. Further, in 2018, FAD-280 clarifies:

> The provisions contained in 7 C.F.R. § 400.176(b), and the equivalent language in section 20(i) of the Basic Provisions, preempts any state law claims that are in conflict. That means that to the extent that State law would allow a claim for extracontractual damages, such State law is pre-empted and extra-contractual damages can only be awarded if FCIC makes a determination that the AIP, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled. Therefore, this means that state law claims may be possible but recovery of extra-contractual damages is limited and the determination from FCIC must first be obtained.

FAD-280. To the extent that Pelzer relies on Plants in making a distinction between tort and contract cases for the purposes of preemption, such reasoning no longer has a viable legal root. See Pelzer, 928 F. Supp. 2d at 1078 ("As the Tennessee Court of Appeals explained in *Plants*, by virtue of these policy provisions and regulations, contract claims against private insurers are preempted but tort claims are not."). Rather, the weight of cases decided since the issuance of FAD-251 indicates that the nature of a state law claim does not determine whether it conflicts with the Act. Instead, conflict preemption is determined by whether the claim invokes an interpretation

12

of the insurance policy and its procedures that conflict with the Act.  See J.O.C. Farms, LLC v. Fireman's Fund Ins. Co., 737 F. App'x 652, 656 (4th Cir. 2018) (listing cases).

Here, Plaintiffs do not dispute that their claims arise under the terms of the Policies pertaining to GFP and judicial review.  (Doc. No. 1 ¶¶ 11, 26; Doc. No. 1-2 at 3, 35).  Further, Plaintiffs acknowledge the conduct Plaintiffs rely on to support all of their state law claims is based on GAIC's GFP determination, thereby seeking damages *directly* related to the Policies and FCIC's interpretations of coverage determinations.  (Doc. No. 63 at 13 (Plaintiffs assert they are seeking redress for GAIC's "bad faith refusal to pay" and its "fail[ure] to comply with the terms of the policy or procedures issued by FCIC"); see Doc. No. 1 ¶¶ 49–53, 56, 61–62, 66–68, 72–81). While the Act and FCIC regulations were not intended to completely foreclose state law claims against GAIC, the Court "agree[s] with the weight of recent authority recognizing that claims arising from an insurer's determination under the policy are preempted." J.O.C. Farms, 737 F. App'x at 656.  This is because such claims, like Plaintiffs' here, impinge on the purpose, intent, and authority of the Act by providing for expanded forms of relief for claims arising from GAIC's GFP determination not authorized by the Act.[5]  Id. (affirming district court dismissal of tort claims as conflict preempted by the FCIA); Dixon, 198 F. Supp. 3d at 841 (plaintiffs must show damages "unrelated" to the insurance policy to not have state law claims preempted); Weadon v. Producers Agric. Ins. Co., 2024 WL 1603678, at *3 (M.D.N.C. Apr. 12, 2024) (finding state law claims related to coverage determinations preempted under the FCIA); Williamson Farm v. Diversified Crop Ins. Servs., 2018 WL 1474068, at *5 (E.D.N.C. Mar. 26, 2018), aff'd, 917 F.3d 247 (4th Cir.

---

[5] To the extent Plaintiffs argue that they seek "judicial review" as a separate claim under Count I (Doc. No. 1 at ¶¶36–44), it is not clear this is a viable claim for relief.  However, even if the Court were to find it was a separate claim, it should still be dismissed because of Plaintiffs' failure to obtain a positive FCIC determination because Plaintiffs base their "claim" for judicial review on GAIC's GFP determination.  (Id. ¶¶ 38–41).

13

2019) (finding North Carolina unfair and deceptive trade practice claim preempted given the limited scope of remedies provided by the FCIA). The authority on which Plaintiffs rely is inapposite because they rely on earlier versions of the regulations that included language more readily admitting state law determinations of such claims. See e.g., Meyer v. Conlon, 162 F.3d 1264, 1268–69 (10th Cir. 1998) (per curiam); Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc., 121 F.3d 630, 633 (11th Cir. 1997); Nobles v. Rural Cmty. Ins. Servs., 303 F.Supp.2d 1292, 1296–98 (M.D. Ala. 2004). Accordingly, all of Plaintiffs' claims conflict with and are preempted by the Act. They did not obtain a non-compliance determination from FCIC pursuant to Section 20(i) that would permit them to seek extra-contractual damages relating to GAIC's GFP determination. J.O.C. Farms, 737 F. App'x at 656.

Plaintiffs' second argument, that the outcome of the Section 20(i) FCIC determination is irrelevant so long as Plaintiffs seek one, fares no better. To support this argument, Plaintiffs cite to federal regulations, FADs, and Manager's Bulletin MGR-14-010 that provide that a party can only pursue state claims if it obtains a determination from FCIC, and that filing for judicial review should precede filing for that determination. (Doc. No. 63 at 13 (citing to FAD-280 and FAD-282 for the premise that a party can pursue extra-contractual damages after obtaining a determination from FCIC), 14 (citing to Manager's Bulletin MGR-14-010 for the premise that a party must seek judicial review before seeking a Section 20(i) determination from FCIC)). Plaintiffs' arguments miss the point.

The Act and its implementing regulations do not merely require that an insured seek any Section 20(i) determination from the FCIC as a matter of course before seeking to recover extra-contractual damages for claims relating to the Policies in federal court. Rather, the Act, its implementing regulations, and the terms of the Policies all require a Section 20(i) determination

of non-compliance from FCIC.  Not just any determination, but one that "the AIP, agent or loss adjuster failed to comply with the terms of the policy or procedures issued by the Corporation and such failure resulted in the insured receiving a payment in an amount that is less than the amount to which the insured was entitled."  FAD-240; see FAD-251; FAD-280; 7 C.F.R. § 457.8 ¶ 20(i); see also Manager's Bulletin MGR-14-010 (noting RMA will review record in a Section 20(i) determination for the same).  The FCIC's repeated denials of Plaintiffs' Section 20(i) requests for a determination of GAIC's non-compliance (Doc. Nos. 39-1, 54-1, 54-2) is dispositive of Plaintiffs' argument.  This is because the Section 20(i) requirement that FCIC provide an insured with a non-compliance determination prior to recovering extra-contractual damages for policy-related claims conflicts with, and therefore preempts, state law where state claims would allow for recovery not permitted by the Act.  Wanamaker Nursery, Inc. v. John Deere Risk Prot., Inc., 364 F. Supp. 3d 839, 849 (E.D. Tenn. 2019) ("Applying that provision, the Wanamakers were required to obtain authorization from the FCIC before making any bad faith claim for damages. It is uncontroverted that they failed to do so and the policies' relevant provision preempts state law. For those reasons, the Court will dismiss the Wanamaker's bad faith claim under Tennessee law."); see In re Dupree Farms, LLC, 2024 WL 3633272, at *4 (Bankr. E.D.N.C. Aug. 1, 2024) (the FCIC's determination that it had no authority to issue a determination under subpart P did not satisfy Section 20(i) requirement that a policyholder must obtain a determination of non-compliance from the FCIC prior to pursuing a claim for extra-contractual damages against an AIP based on actions relating to a federal crop insurance policy).

      Accordingly, GAIC has carried its burden in showing Plaintiffs' claims conflict with, and are preempted by, the Act.  In re Ford Motor Co., 65 F.4th at 859.  All of Plaintiffs' claims will be

15

dismissed with prejudice. Because all of Plaintiffs' claims are preempted, the Court need not address GAIC's other Rule 12(b)(6) arguments and Plaintiffs' responses.

V. **CONCLUSION**

For the foregoing reasons, GAIC's Motion to Dismiss (Doc. No. 58) will be granted, and the claims against GAIC will be dismissed with prejudice. GAIC's Motion for Oral Argument (Doc. No. 60) will be denied as moot.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE